## MOTT *v.* CLARK.

The assignee of a mortgagee takes subject to the equities of the mortgagor, but not as to latent equities of *cestuis que trust* of the mortgagor or other persons.

Where one holding under a secret trust had conveyed to his *cestui que trust*, and then mortgaged to one having notice of that conveyance, an assignee of a *bonâ fide* assignee of the mortgage whose assignment was not registered, is not affected by the registry of the conveyance to the *cestui que trust* after the date of the first assignment and before the second; nor is he affected with notice to the mortgagee of the trust and conveyance.

The assignee of a bond or other *chose in action* is only liable to secret equities of the obligor or debtor.

The assignee of a mortgage is not bound, under the recording acts, to register his assignment.

In ejectment by an assignee of a mortgagee against a stranger, the mortgagor is a competent witness for defendant to prove notice to the mortgagor that part of the land did not belong to him, and was by mistake included in the mortgage.

The value of the property purchased at sheriff's sale cannot be proved in an ejectment by the purchaser to affect his title.

If a mortgagee purchasing at a sheriff's sale, which does not divest the mortgage, retain the price; so much as is payable to prior liens cannot be considered as applied to the payment of the mortgage, even though six years have elapsed since the sale.

*Dec.* 18. This was an ejectment to recover a moiety of two pieces of land, one moiety of which plaintiff was in possession of.

The main question arose out of the following facts:—In 1820 John Clark obtained the title by a sheriff's deed to the whole property; but in fact he was trustee for his father, Vinson Clark, for a moiety. In 1821 John conveyed this moiety to Vinson Clark, the defendant, but the deed was not registered until 1836.

In 1831, John Clark mortgaged the whole property to Broadhead, the mortgage being registered in November. But according to the verdict Broadhead had notice, at and before the date of this mortgage, of the real extent of John Clark's title, and of the deed to V. Clark.

In 1832, Broadhead, by deed which was never registered, assigned the bond and mortgage to Johnson, who had no notice of V. Clark's title.

In 1835, there was a judgment recovered by Johnson on another cause of action against John Clark, under which the whole of the property in question was, in 1837, sold and conveyed by the sheriff to Johnson. But at this sale notice was given of Vinson Clark's title to the moiety.

In 1844, Johnson conveyed to the plaintiff, who, it was assumed, had notice of V. Clark's title, and in 1845 he assigned him the mortgage. On the accompanying bond judgment had been entered in 1832. Whether this was assigned or not, could not be gathered from the bill of exceptions.

Under these circumstances the defendant contended that the sheriff's sale having passed but a moiety, on account of the notice given by V. Clark, the plaintiff's right under the mortgage was postponed: 1. Because of the notice to the mortgagee of the state of the title. 2. Because the assignment was not registered before Vinson Clark's deed was. 3. Because the mortgage merged in plaintiff's title under the sheriff's deed.

On this point the court (JESSUP, P. J.) instructed the jury, that if Broadhead had notice of V. Clark's deed, plaintiff was bound by it.

The other exceptions were as follows: 1. The court permitted defendant to read the preceedings under the judgment on the bond whereby other property had been sold to Johnson subsequently to his purchase of the property in question. 2. They permitted defendant to examine John Clark, to prove notice to Broadhead of the title and deed to V. Clark, and that this moiety of the land was included by mistake. 3. They also permitted defendant to prove that Johnson at the sheriff's sale gave but the value of a moiety of the premises. 4. The defendants had shown several judgments against J. Clark, prior to that under which plaintiff purchased—which were liens—and that no purchase-money was paid by him to the sheriff. The court told the jury that if plaintiff held under the mortgage only, then the amount of his bid, which was applicable to other creditors on their liens who had acquiesced, should be applied to the payment of the mortgage debt.

The case was argued December 22–8, 1847, and now re-argued on the effect of the notice to Broadhead of Vinson Clarke's title, by

*Reeder*, for plaintiff in error.—The evidence in the first bill was irrelevant. 2. Clark was interested to pay the mortgage debt, the verdict would be evidence for him as a privy. [BELL, J.—For privies in estate, but not as to his personal liability.] 3. Whether he made a good bargain, was irrelevant and dangerous, by producing a false sympathy. 4. The sheriff is liable to the other lien-creditors if he improperly permitted the purchaser to retain the bid. But the main question is on the effect of the notice and the recording acts. If, in a contest between two assignees, the recording act can have no operation because the assignment is not "a conveyance of, and concerning lands, or whereby the same may in any way be affected," as was shown in 4 Raw. 257, the same reasoning will show that under this act a subsequent registered mortgage would not postpone a prior un-registered mortgage; and yet the same section of the act shows such a mortgage will postpone a prior unregistered deed. By the act, the instruments to be postponed are conveyances affecting lands, and the persons who are to postpone, are purchasers or mortgagees. If, therefore, the recording acts are to have any bearing, it must be by treating assignees as purchasers or mortgagees. But here there is no conflict. When the mortgage was registered, it created a distinct title, purchasers of

which were not bound by the settled rule of this court (7 W. 382, 5 Raw. 51) to examine the registry for matters subsequent in date, except for conveyances under the mortgagee himself. As respects titles derived from the mortgagor, those conveyances which were duly registered to charge the mortgagee at that time need only be examined. Hence, Mott was not affected by the subsequent registry of defendant's deed, though prior in date. And he is clearly entitled to the benefit of want of notice by Johnson: Sug. on Vend. 729.

To what extent is he then affected by the personal notice to the mortgagee? The authorities are clear that he is bound by the equities of the mortgagor, but not by latent equities of third persons: 4 Ves. 118, and Am. n.; 1 Pow. on Mortg.; 3 Ib. 904; 2 Cow. 247; 2 J. C. R. 443; Ib. 479; 6 Ib. 417; 3 Yeat. 351.

*J. M. Porter*, contrà.—1. The evidence was part of the record shown by plaintiff, and it also showed a partial payment of the instrument under which he claims.   3. Whether he was a *bonâ fide* purchaser is to be shown by the amount he paid: 5 W. 538.   4. The claim against the sheriff is barred by the act of limitations: 5 Barr, 285.

It is settled by 5 W. & S. 49, and other cases, that under the act of 1775, the subsequent purchaser registering his deed is preferred before a prior purchaser of the fee: if he is within the registry acts, then he is postponed by these decisions; if he is not, then those acts afford him no protection. Unless, therefore, the assignee of a mortgagee is in a higher position, he will be postponed. But he is clearly not; on the contrary, the cases clearly show him to be but a lien-creditor, whose title or right passes with the bond. 17 S. & R. 400, 3 Pa. 379, 4 R. 257, show this, and hence it follows, that like the assignee of any other bond, he is in no better situation than his assignor. Lancaster *v.* Dolan merely decided he is a purchaser within the 27 Eliz. But supposing his mortgage to exist as a lien, then it merged in the fee purchased at the sheriff's sale, and could not subsequently be revived. The furthest that the cases have gone, is to say it may depend on an intention not to merge; but by his conveyance to Mott, and the covenant from the words grant, bargain, and sell, there was an election by him to treat the mortgage as merged.

*Reply.*—If Johnson had acquired the estate by the sheriff's sale this would apply; but this verdict has shown that he never did

purchase defendant's moiety. How then can this doctrine prevail? Surely the mere acquisition of the legal title will not merge the trustees' security or lien on the equitable title. It never yet has been decided that where the legal and equitable estates are in different persons, merger must take place, contrary to the interest of the trustee, or without a clear intent expressed by him. But here the title of V. Clark being registered before the sheriff's sale, Johnson did not acquire any title thereto, but on the supposition that deed was fraudulent, which it was not, according to the verdict: as to that, the requisites to merger are therefore wanting.

*Jan.* 3. ROGERS, J. (after stating the two titles under the mortgage and the sheriff's sale.)—Either of the titles as above stated would entitle the plaintiff to a verdict. But the defendants contend the plaintiff cannot recover because Thomas Clark, on the 5th January, 1841, conveyed an undivided half of the premises (being the property in dispute) to his father, Vinson Clark. That this deed was acknowledged on the day of its date, and was recorded May 1st, 1821. The deed being recorded before the sheriff's sale, and moreover V. Clark having given notice at the sale, the court properly instructed the jury that the purchaser at the sheriff's sale obtained no title unless the deed from John Clark to V. Clark was fraudulent. The jury decided that it was a *bonâ fide* conveyance. There is therefore an end to the title grounded on the sheriff's deed.

Has then the plaintiff, the assignee of Broadhead, a title under the mortgage?—and this is a principal point in this case. The mortgage to Broadhead was recorded 28th November, 1831, but the deed from J. Clark to V. Clark, although prior in date, was not recorded until May 1st, 1836. And this would be decisive of the case; but the defendant replies, that although his deed is recorded upwards of five years, after the entry of the mortgage, he is not to be postponed, because the mortgagee had actual notice of the conveyance of a moiety of the property by John Clark, to his father, V. Clark. The fact of notice was properly left by the court to the jury, who found that the mortgagee had notice. But in answer, the plaintiff contends that admitting this to be so, he is an assignee without notice, and however it may be as between the mortgagee and third persons, he takes the property discharged of all equities of which he had no knowledge. The question, therefore, is (granting he had no notice, which is undoubted), does the assignee stand in the

same or a better position than the mortgagee? On this point the court instructed the jury, that the assignment of a mortgage is not so within the recording acts, as to give the assignee protection against an unrecorded deed, of which the mortgagee had full notice. That a mortgagee is a purchaser within the statute of frauds, is ruled in Lancaster v. Dolan, 1 Raw. 245, on the authority of Chapman v. Emery, Cowp. 278. Now it has been repeatedly ruled, that although a purchaser has notice of an equitable claim, by which his conscience is affected, yet a person purchasing from him *bonâ fide*, and without notice of the right, will not be bound by it. So a person having notice of an equitable claim may safely purchase of a person who bought *bonâ fide*, and without notice. These positions are elementary, and are fully sustained by the authorities cited. If, therefore, a mortgagee is to be considered on the footing of a purchaser, it would seem to follow that an assignee without notice takes the property discharged of a latent equity, if any existed. These cases, although analogous, are not expressly in point, but the case of an assignee of a bond and mortgage is expressly ruled in Livingston v. Dean, 2 J. C. R. 479. He takes it subject to all the equity of the mortgagor, but not to the latent equity of a third person. To subject him to such an equity he must have express or constructive notice at the time of the assignment. It is a general and well settled principle, says the chancellor, in Murray v. Lylburn, 2 J. C. R. 443, that the assignee of a *chose in action* takes it subject to the same equity it was subject to in the hands of the assignee: 2 Vern. 691–765; 1 Pr. Wms. 497; 1 Ves. 122; 4 Ves. 118. But this rule is generally understood to mean the equity residing in the original obligor or debtor, and not an equity residing in some third person against the assignor. He takes it subject to all the equity of the obligor, say the judges in the very elaborately argued case of Morton v. Rose, 2 Wash. 233, on this very point, touching the rights of the assignee of a bond. The assignee can always go to the debtor and ascertain what claims he may have against the bond or other *chose in action*, which he is about purchasing from the obligor; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries, and for this reason the claim of the assignee, without notice of a *chose in action*, in the late case of Redfearn v. Ferrier, 1 Dow, 50, was preferred to that of a party setting up a secret equity against the assignor. Lord Eldon observed, in that case, that if it were not to be so, no assignment could ever be taken

with safety. It would be utterly impossible to guard against combination by the mortgagor and mortgagee, particularly with the aid of the owner of the latent equity. If V. Clark, the owner as he alleges of the moiety, loses his property, it is his own *laches*, for it was his duty to put his deed on record as notice of his title. Having neglected his duty, he is postponed to the mortgagee, who is a purchaser within the statute of frauds. At law his title is available against the owner, who neglected to put his deed on record. The assignee stands in the position of the mortgagee so far as regards the legal title, but stands, as the authorities evidently show, unaffected with an equity of which he had no knowledge or possibility of knowledge, and against which it would be impossible for him, with the most careful diligence, to guard himself. If he had notice of the outstanding equity, he would be in the same position as the mortgagee, and equity in such case would relieve the owner of the estate, notwithstanding his neglect. The principle on which courts of equity act, is that actual notice is equivalent to constructive notice derived from the registry of the deed. The intention of the acts requiring deeds to be recorded, was to secure subsequent purchasers and mortgagees against prior secret conveyances and fraudulent encumbrances; and therefore when a person has notice of a prior conveyance, it is not a secret conveyance by which he can be prejudiced; for he can be in no danger where he knows of another encumbrance, because then he might have stopped his hand from proceeding, and therefore is not the person whom the statute meant to relieve. The court of chancery affords relief, because it is against equity for him to protect himself by his legal title when he had express notice of a prior conveyance or encumbrance. But it is evident this must be personal to the mortgagee, and cannot affect his innocent assignee. Why should an innocent assignee be deprived of the benefit of the legal title, in favour of a person who, by his neglect to put his deed on record, has put it in the power of the mortgagee to perpetrate a fraud? It is an invariable principle of equity, that where one of two innocent persons must suffer, he who is the cause of the loss must bear it. But it is contended Jeromus Johnson is postponed, because he did not put his deed or assignment on record until after V. Clark's deed was recorded. In Lightner v. Mooney, 10 W. 407; Ebner v. Goundie, 5 W. & S. 49; Goundie v. Water Co. 7 Barr, 233, it is ruled, under our statute, that where there are two deeds of conveyance of different dates, neither of which is recorded within six months, that which is first recorded will take priority. And this would be conclusive, but for

the answer that the assignee is not bound to register his assignment, and is in no default, as is conclusively shown by Mr. Justice Kennedy in Craft v. Webster, 4 R. 254. The learned judge, after an able review of the point, comes to the following conclusion:—"Having shown that an assignment of a mortgage is not a conveyance of and concerning land, whereby the same may be in any way affected in law or equity (which are the words of the recording act), it is not necessary that it should be recorded, as required by that act, to give it validity against a subsequent assignment made by the mortgagee to a third person for valuable consideration, without notice of the first. If the first assignment were in writing, proved and recorded, the recording would afford the assignee no additional protection against a claim under a subsequent assignment."

This is the principal point in the case; but as it goes down for another trial, it becomes necessary briefly to notice the other exceptions. We cannot see the relevancy of testimony as admitted in the first bill, because it was the sale of other property with no connexion that we can perceive with this case, unless it should appear to be for the same debt; in which case, the proceeds of sale would be applicable to the payment of the mortgage. 2d. We cannot see what interest J. Clarke has in the controversy. He is not directly interested in the event, nor would a verdict and judgment in this case be evidence in any suit to which he may be a party. There has been nothing exhibited to us to show that he has an interest to have the mortgage extinguished by the rents. So far as appears, if he has any interest, it is to prove that the mortgagor has been paid, as perhaps, in that event, it might render him liable to an action at the suit of the assignee. The evidence contained in the third bill was improperly admitted, for the value of the property in dispute has nothing to do with the issue, and is only calculated to perplex the minds of the jury, by exciting an impression that Johnson had made an advantageous bargain. That Johnson paid only the one-half of the value of the property, after the notice of V. Clark at the sheriff's sale, cannot affect his title to the property, and ought not to have the slightest weight in the determination of this case.

There is no error in proving that Johnson received the benefit of the whole proceeds of the sheriff's sale, by retaining it on account of his mortgage. The effect of the evidence will depend on other circumstances. For if there was a surplus over and above the liens against the estate, the mortgagor would have the right to apply that surplus to the extinguishment of the mortgage. But

if there was no surplus but money applicable to judgment-creditors, which has been misapplied, they are the persons who, having been injured, have alone the right to complain. The sheriff would be answerable to the creditors, and Johnson would be answerable to the sheriff, and nothing but an express contract or agreement would protect them. The court, therefore, did injustice to the plaintiff in charging the jury that this money having been received by Johnson for Clark's property, and not accounted for by him to other creditors, and they having acquiesced therein, should now be applied by the jury, to cancel, so far as it goes, the indebtedness of John Clark to Johnson. Admitting the fact that Johnson received money which he has not accounted for to the other creditors, yet there is no evidence of any agreement by the creditors that the money should be misapplied. If so, they have their remedy against Johnson, and not the mortgagor; and the court had no right to expose Johnson to the risk of paying the money not only to the mortgagor, but to the creditors also.

I refrain from noticing the question of merger, because it forms no part of the case now before the court. It will be time enough to decide when it properly arises.

Judgment reversed, and a <em>venire de novo</em> awarded.