## Fair and Square Building & Loan Association v. Presbyterian Board of Publication, etc., et al., Appellants.

Argued November 25, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Earl G. Harrison,* with him *Saul, Ewing, Remick & Saul,* for appellant.—It has always been the policy of

the law to protect mortgage loans and until the opinion of the Superior Court, it was regarded that an assignee of a mortgage who took a declaration of no set-off was entirely protected so far as the amount of the mortgage was concerned.

*Aaron Trasoff*, for appellee.—The payment of the $2,000 was a payment on account of the first mortgage: Mitchell v. Coombs, 96 Pa. 430; Loverin v. Deposit & Trust Co., 113 Pa. 6.

So far as the junior lien holder is concerned, the first mortgage was, from the date of the $2,000 payment and thereafter, a first lien of but $10,000.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 5, 1931:

This proceeding by a second mortgagee which became owner of the mortgaged real estate by purchase at its own foreclosure sale, was brought to compel the assignee of the first mortgage, to which plaintiff's title is subject, to note of record what plaintiff contends was a payment by the mortgagor of $2,000, thereby reducing the principal debt of the first mortgage to $10,000. The chancellor dismissed the bill; exceptions filed were overruled, and an appeal was taken by plaintiff to the Superior Court, which reversed the trial court's decree. Upon special allowance, defendant appealed to this court.

The material facts in the case are: On November 25, 1922, Markellos, owner of premises No. 2012 Green Street, Philadelphia, executed and delivered to Dallam a bond secured by a first mortgage on the property for $12,000; and on June 12, 1924, he executed and delivered to the present plaintiff a bond secured by second mortgage on the same property for $6,500. Subsequently the first mortgage became due, and, Dallam having twice made demand for payment, Dorman, attorney for Markellos, entered into an oral agreement

with Dallam, which the chancellor found to be as follows: "It was agreed that, upon receipt of the principal and accrued interest on said first mortgage of $12,000, the defendant Dallam would assign said first mortgage to purchaser to be obtained by Markellos, and that, meanwhile, the latter would, through his agent, advance to the defendant Dallam the sum of $2,000 to be credited on the amount to be received by the defendant Dallam for assigning the said mortgage." The chancellor also found that "the said sum of $2,000 was then and there paid to the defendant Dallam in accordance with said arrangement."

In carrying out the terms of the agreement, Dorman, in January, 1927, induced defendant organization to accept an assignment of the bond and first mortgage. It paid $12,000 and received a certificate of no set-off from Markellos, stating that the principal sum of $12,000 was due and payable on the mortgage and that he had no defense thereto. Dallam received the $12,000 and refunded Markellos the $2,000 previously advanced by him.

In December, 1926, Markellos defaulted on the second mortgage held by plaintiff and, according to plaintiff, foreclosure proceedings were not instituted because Markellos produced the receipt which Dallam gave to Dorman upon receiving the $2,000, which plaintiff relied upon as evidence of a payment on the first mortgage indebtedness. Later, upon Markellos again defaulting, plaintiff foreclosed its second mortgage and bought in the premises. Plaintiff's deed from the sheriff recited that its title was subject to the $12,000 first mortgage. Plaintiff later filed the present bill to have the first mortgage debt reduced to $10,000 because of the alleged $2,000 payment.

The principal question involved briefly stated is as follows: Is the second mortgagee, who has become owner of the property, entitled to have the first mortgage debt reduced to $10,000 because of the "payment"

of $2,000 by the mortgagor to the first mortgagee previous to the first assignment of the first mortgage to defendant? If so, the "payment" must be held to be in actual reduction of the mortgage principal rather than an advance on the contemplated assignment.

The chancellor's finding for defendant primarily rests upon his conclusion that the $2,000 was given "to be credited on the amount to be received by the defendant Dallam for assigning the said mortgage," and that "the intent was not to pay off part of the mortgage ......[but] the true situation was that Dorman on behalf of Markellos wished to advance funds to Dallam on account of or in anticipation of a sale of the entire mortgage, in order to induce Dallam to give Dorman time to obtain a purchaser." The Superior Court held the question one of both law and fact and said that inasmuch as the $2,000 was paid by the mortgagor, it inured, as a matter of law, to plaintiff's benefit.

Applicable to plaintiff's exception to the chancellor's finding above quoted, we repeat what we said in Shimer v. Aldine Trust Co., 264 Pa. 444, 447, "Our examination of the record as a whole, including the evidence, does not lead to any doubt concerning the correctness of the chancellor's finding; but as recently said in Cruzan v. Cruzan, 243 Pa. 165, 166, 'if a doubt existed it would not be ground for a reversal......; nothing but clear error will warrant the setting aside of findings of fact by a chancellor.'" The evidence shows the finding is amply supported by the testimony of Dallam, who stated that the agreement was that, upon payment of $2,000, he would hold it and assign the mortgage, but not credit the payment on the bond. Dorman confirmed this view of the transaction in testifying that Dallam had not requested a reduction of the mortgage debt, that all negotiations with Dallam had to do with an assignment of the mortgage, and that payment of the $2,000 was made on account of his agreement to make such assignment. This, in our opinion

disposes of plaintiff's exception to the finding relating to the $2,000 payment.

The argument of appellee on the legal aspect of the transaction, is based upon the reasoning in the opinion of the Superior Court, in effect as follows: The payment of $2,000 could not be considered as having been made on account of the assignment to defendant as the mortgagor had not at that time definitely secured a third party willing to take the assignment, and it must, consequently, be held, as a matter of law, either that the payment was in reduction of the mortgage debt or was in contemplation of an assignment to the mortgagor himself, or his nominee,—the legal effect of which would be a merger of the equitable and legal interests, extinguishing the mortgage debt to the extent of $2,000. Appellee argues that the "payment" should not "remain suspended" until the mortgagor secured a person willing to take the mortgage, as such situation would deprive the transaction of any legal effect. Appellant's answer to this argument is, why not allow the transaction the legal effect intended by the parties,—a payment on account of the assignment? The only analogous cases as to what was intended are those wherein the mortgage debt was actually paid by the mortgagor, and an attempt made to keep the mortgage alive through a device of title holding, which seriously questions the bona fides of the transaction as respects the rights of a third party or junior encumbrancer; see Loverin, Hall & Co. v. Humboldt Safe Deposit & Trust Co., 113 Pa. 6. After payment of a mortgage debt, although the mortgage security may be kept alive, as between the mortgagor and mortgagee, to cover future advances (Peirce v. Black, 105 Pa. 342, 345-6), as respects a subsequent mortgage or judgment creditor it must be regarded as satisfied (Girard Trust Co. v. Baird, 212 Pa. 41, 44); but inasmuch as this mortgage debt was in no sense actually paid, this rule has no application here. Plaintiff relies on Mitchell

v. Coombs, 96 Pa. 430, and Loverin, Hall & Co. v. Humbold Safe Deposit Co., supra. In the former case, the jury found as a fact that the mortgagor had fully paid the mortgage debt, and the sole question before the court was whether the mortgagee, instead of satisfying the encumbrance, could retain it as security for further advances, for the purpose of giving it priority over judgment creditors of the mortgagor. In the Loverin Case, the mortgagor, by the device of having her debtor, instead of paying her the debt, pay the indebtedness to the mortgagee and take title to the mortgage, endeavored to keep the paid mortgage alive to the prejudice of a subsequent unpaid mortgage. This court refused to permit the scheme to work such prejudice. In the face of the chancellor's finding that the $2,000 was given as an advance on the assignment, and his finding that defendant took the mortgage from Dallam in the full sum of $12,000, we cannot hold that a payment was actually made on the mortgage (as in Mitchell v. Coombs), nor that the assignee, through a title-holding device, was acting on behalf of the mortgagor for the purpose of prejudicing the junior encumbrance, as in Loverin, etc., Co. v. Humboldt, etc., Co.

It is important to note that defendant purchased the $12,000 mortgage without notice of the arrangement regarding the advance of $2,000 and, to protect itself, required a declaration of no set-off. Almost a year later plaintiff bought in the property, the sheriff's deed reciting that the premises were subject to a first mortgage of $12,000. Accordingly it is as against a bona fide assignee without notice that the plaintiff now seeks to have the first mortgage debt reduced. The record shows plaintiff was dilatory in taking steps to have the public record show the alleged payment. If a proper payment, it could have been so endorsed before the assignment here in question was made. An assignee of a mortgage, without notice, takes the encumbrance free and clear of latent equities in favor of

third persons: 2 Jones on Mortgages, 8th ed., section 1069. An innocent assignee is not to be deprived of the benefit of the legal title in favor of a person who by his neglect to place his deed on record has placed it within the power of the mortgagee to prejudice such person's interest: Mott v. Clark, 9 Pa. 399, 405. Although plaintiff avers it postponed foreclosure of its mortgage on the faith of Markellos' representation that the $2,000 payment was on the principal debt secured by mortgage, that fact, if true, would attach to the receipt given by Dallam no higher equity than defendant had in relying upon Markellos' declaration of no set-off.

So far as we are able to discover no reason exists why an arrangement whereby a mortgagor advances funds toward a contemplated assignment is not permissible. But an understanding of this character cannot prejudice legal or equitable interests in the property in a case similar to the present, where no element of fraud is disclosed.

In conclusion the policy of the law has always been to protect mortgage loans. Under present practice, it is the duty of the assignee of a mortgage to make investigation as to previous payment, equitable set-off, etc., only in the absence of a certificate of no defense: Fallon on Pa. Law of Conveyancing, section 329, p. 420. An existing first mortgage on real estate could not be purchased without risk if the view of appellee were adhered to, unless the intending purchaser first consulted all subsequent encumbrancers and received from them a certificate of no defense or other similar document. We do not question the rule that a junior encumbrancer may take advantage of a total or part payment of a previous encumbrance, and that it is not permissible for the debtor to defeat this rule by an attempt to keep alive for his own purpose encumbrances which are actually paid. However, where there is a bona fide money transaction such as the mortgagor and mortgagee entered into in the present case for

their own convenience, which action was neither intended as, nor effected, a payment on the principal debt of the mortgage, nor in fraud of plaintiff's interest, such proceeding will not be construed so as to endanger the mortgagee's lien, even in the hands of a subsequent purchaser without notice.

The judgment of the Superior Court is reversed, and the bill dismissed, costs to be paid by plaintiff building and loan association.