## Liberty Trust Company of Emporium et al. v. Emporium Land Company et al.

*Johnson & McNarney* and *Edwin W. Tompkins*, for plaintiffs.

*Driscoll, Gregory & Coppollo*, for defendants.

BAIRD, J., February 14, 1936.—On July 25, 1935, the present receiver of the First National Bank of Emporium, Pennsylvania, hereinafter referred to as the bank, presented his petition for an order opening the judgment entered in the above-entitled case against the said bank, trustee for creditors and stockholders of the Liberty Trust Company of Emporium, terre-tenant, and thereupon a rule to show cause was granted.

An answer to said petition was filed by the liquidating trustees of the Liberty Trust Company, and depositions were taken by both parties.

The facts are:

1. On March 25, 1927, judgment was entered against the Emporium Land Company and in favor of the Liberty Trust Company of Emporium, hereinafter referred to as the trust company, for $4,000.

2. On June 28, 1927, an agreement was entered into between the trust company and the bank whereby the bank, in consideration of the assignment, etc., to it of all the assets and property of the trust company, agreed, inter alia, to pay and discharge all of the liabilities and obligations of the trust company other than to its stockholders as such, as shown by its books and records, and from time to time to absorb and liquidate the property and assets of the trust company. By the eleventh paragraph of this agreement the bank was authorized, for

the protection of the assets and property acquired from the trust company in the liquidation thereof, to buy property at a judicial or other sale, which when so purchased should become part of the unliquidated assets of the trust company, and expend money for that purpose, which should be charged against the trust company, etc.; but the bank was prohibited from taking any such action without conference and consultation with the liquidating trustees of the trust company.

3. On July 20, 1927, said judgment was assigned to the bank.

4. On May 6, 1929, the bank purchased at a county treasurer's sale of unseated lands 23 tracts or parcels of land, aggregating about 8,300 acres, assessed in the name of the Emporium Land Company.

5. On May 6, 1931, the right to redeem said lands from said sale expired.

6. On March 23, 1932, the trust company, for the use of the bank, now for the use of Josiah Howard, Charles Counsil, and J. P. McNarney, liquidating trustees of the Liberty Trust Company of Emporium, caused a writ of sci. fa. to be issued on said judgment to revive and continue the lien thereof against Emporium Land Company, defendant, and the bank, as trustee for creditors and stockholders of the trust company, terre-tenant.

7. On April 20, 1932, judgment was entered in favor of the plaintiff and against the defendant generally, and against the bank as trustee aforesaid with respect to the land bound by the original judgment, for want of an affidavit of defense, for $5,478.46.

8. On or about September 22, 1932, the bank was declared insolvent and was taken over for liquidation by the Comptroller of the Currency of the United States.

9. The failure of the bank to interpose any defense to the sci. fa. was due to the opinion and advice of its attorney that none was necessary. His opinion seems to have been that because the lien of the original judgment had been discharged by the treasurer's sale it could not

be revived by sci. fa. so as again to become a lien upon the lands in the hands of the purchaser, and that any judgment against the purchaser of the lands as terre-tenant would be a nullity.

The contentions of the petitioner are that upon the failure to redeem the title of the bank became perfect; that the bank was at no time a terre-tenant of the Emporium Land Company, defendant; that at the time said writ of sci. fa. was issued the bank held no lands upon which the original judgment was a lien; and that said writ of sci. fa. was not contested by the bank through no fault of its own, but because of the neglect and lack of care on the part of its attorney, Jay P. Felt, Esq., since deceased, to whom it was referred by the then president of the bank.

The contentions of the liquidating trustees of the trust company, respondents, are that the bank took title to the original judgment as trustee and only for the purpose of liquidating the same and applying the proceeds thereof to the payment of the obligations of the trust company, etc.; that the purchase by the bank of the lands of the Emporium Land Company at the treasurer's sale was made by virtue of paragraph 11 of said agreement; and that the lands thereupon became a part of the unliquidated assets of the trust company. They deny that the title to said lands became perfect in the bank on May 6, 1931, as alleged in the petition, or any other time. They argue from these contentions that the bank acquired said lands as a terre-tenant of the Emporium Land Company, former owner and judgment debtor, but how they arrive at this conclusion we are unable to understand. They deny that said sci. fa. was not contested through any fault of the bank and aver their understanding to be that when the matter was referred to Mr. Felt he gave it careful attention, became satisfied that the bank, as trustee for the creditors and stockholders of the trust company, had no defense thereto and so reported to the president and board of directors of the bank.

The respondents further contend that, more than three years and three months having been allowed to elapse between the entry of judgment on the sci. fa. to revive and the filing of the petition to open the same, the bank and its receiver have been guilty of such laches as to preclude consideration of the petition.

The principal points of dispute developed by the depositions concern the question whether the respondents had notice prior to the treasurer's sale of the bank's intention to purchase the lands of the Emporium Land Company for itself, and the question why the bank did not interpose any defense to the sci. fa. In our opinion the decision of neither of these questions, nor of any of the questions raised by the respondents in their answer, except the question of laches, is necessary to a proper disposition of the pending rule.

We agree with the petitioner that upon failure to redeem the lands purchased by the bank at the treasurer's sale were discharged from the lien of the original judgment. Section 9 of the Act of May 29, 1931, P. L. 280, to that effect, although not enacted until after the treasurer's sale of the lands in question and after the time allowed for redemption had expired, was but a statutory declaration of the law as it previously existed: Singer's Appeal, 4 Sadler 430; Hall, Searches and Titles in Pennsylvania, sec. 141, pages 86 and 87.

We also agree with the petitioner that, the lien of the original judgment having been discharged prior to the issuance of the sci. fa. to revive, the bank did not become a terre-tenant by purchase of the lands at a subsequent treasurer's sale:

"A terre tenant, in a general sense, is one who is seised or actually possessed of lands as the owner thereof. In a *scire facias sur mortgage* or judgment, a terre tenant is, in a more restricted sense, one, other than the debtor, who becomes seised or possessed of the debtor's lands, subject to the lien thereof": Hulett et al. v. Mutual Life

Ins. Co. of N. Y., 114 Pa. 142, 146; The Handel & Hayden B. & L. Assn. v. Elleford et al., 258 Pa. 143, 146.

However, we are of opinion that the bank is bound by the judgment. In Colborn v. Trimpey, 36 Pa. 463, 465, the Supreme Court said:

"It would have been a good plea, that he was not *terre tenant*, and that his land was not subject to the lien. The judgment taken on that writ, without such defence successfully made, concludes him. It is not material to inquire whether the original judgment had lost its lien, or had not—whether the judgment on the *scire facias* was a mere continuance of the former judgment, or an independent judgment *quod recuperet;* there it stands, unreversed and unimpeached, a valid judgment against Rhoads, [the terre-tenant named in the writ] rendered upon legal process duly served on him. It estops him. The execution process issued thereon was effectual for the sale of his land, and the sheriff's vendee took whatever title Rhoads had."

Under all of the circumstances, we do not think that the judgment against the bank should be disturbed at this late day. More than three years and three months were allowed to elapse between the entry of the judgment and the presentation of the petition to open, without any sufficient excuse for the delay being offered. The only excuse made in the petition is the neglect of counsel. If there were any such neglect on his part, it was due to a mistaken view of the law, and the general rule is that a party cannot be relieved from a judgment taken against him in consequence of the ignorance or mistake of his counsel with respect to the law, whether it concerns the rights or duties of the client, the legal effect of the facts in the case, or the rules of procedure: 34 C. J., sec. 530, pages 311 and 312. On the argument the further excuse was made that in the receivership of an insolvent bank its affairs must be untangled one by one as they come to the attention of the receiver, and that the determination of the assets and liabilities of the bank has first demand

on his time. Assuming that to be true and that the receiver was prevented by other and more important duties from sooner taking steps to have the judgment opened, it does not excuse the failure of the officers and directors of the bank, during the five months that elapsed between the time when the judgment was entered and the time when the bank was declared insolvent and a receiver was appointed, from taking any action with respect to the judgment of which complaint is now made.

Since the entry of the judgment the condition of the bank has materially changed. It was declared insolvent on or about September 22, 1932, and it is common knowledge that from that time until the present its receivers have been continuously and constantly engaged in the liquidation of its assets, and have paid out the greater part of the proceeds thereof in dividends, expenses of administration, etc., so that if now the respondents were to be deprived of the security which the judgment against the bank affords they would be put to the hazards and expense of some other form of litigation in trying to enforce the collection of the debt due them, or the alternative of abandoning all effort in that direction.

It may also be proper to note, although not a matter of record in this case, that, prior to the argument of this rule, the receiver, upon application by him, was authorized by this court to sell said lands.

The subject of delay as an element of laches is discussed in 10 R. C. L., sec. 143, page 396, as follows:

"While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally accepted doctrine appears to be that laches is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relations of the property or the parties. Since lapse of time has a tendency to obscure evi-

dence, and often makes it impossible to discover the truth, it is, of course, one of the elements to be considered by the court in applying laches to stale claims, but it is only one, and while important, it is not ordinarily the controlling or most important one. Hence, it has been said, laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief."

See also, to the same general effect, 21 C. J. sec. 219, page 221 et seq.

Now, February 14, 1936, the rule to show cause is discharged.